1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

PATRICK SCHREIBER, on behalf of himself and all
others similarly situated,

NO.

8

9

Plaintiff,

**CLASS ACTION COMPLAINT**

10

v.

11

SIG SAUER, INC., a Delaware corporation,

**JURY TRIAL DEMANDED**

12

Defendant.

13

14

15        This case concerns a defectively designed pistol, the Sig Sauer P320. Sig Sauer designed

16    the P320 without any external safety features, even though the pistol is effectively cocked (i.e.,

17    ready to fire) the moment a round is chambered. This is particularly galling because the P320

18    also has among the lightest and shortest trigger pulls of any comparable pistol on the market.

19    The practical effect is that when consumers carry a loaded P320, it is akin to the consumer

20    taking a loaded revolver, pulling the hammer back, and then walking around with that cocked

21    pistol in the holster—all without any external safety features. As set forth herein, the

22    combination of these features constitutes the Defect (as defined in paragraphs 17–25, *infra*)

23    that uniformly exists in every P320.

24        But Sig Sauer does not tell consumers about the P320's Defect. Nor does Sig Sauer warn

25    consumers that the P320 is extraordinarily dangerous compared to similar pistols. And what

26    was the result? P320 users have experienced a slew of unintended discharges across the

27    country. This has resulted in law enforcement agencies that purchased the pistols as duty

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

weapons having to replace their entire inventory, and scores of victims filing personal injury

lawsuits against Sig Sauer due to the serious injuries caused by the P320's Defect—a Defect that

is uniform among every P320 sold in Washington.

This case seeks to hold Sig Sauer responsible for selling a needlessly dangerous product

to consumers through unfair and deceptive practices in violation of Washington law. Sig Sauer

has known about the P320's Defect for years but has done nothing to remedy the issue. Rather,

it has actively concealed the Defect from its customers and the public. As a result, all

Washington consumers who purchased the P320 have received a product that has the same

Defect and was sold using the same unfair and deceptive practices.

## I.    PARTIES

1.    Plaintiff Patrick Schreiber is a citizen and resident of Washington.

2.    Plaintiff purchased and currently owns a P320 without a manual safety.

3.    Plaintiff purchased his P320 in Bothell, Washington beginning on November 21,

2021.

4.    Plaintiff reviewed Sig Sauer's website prior to purchase and saw Sig Sauer's

representations concerning the safety of the P320. Nowhere did Plaintiff see anything about

the Defect.

5.    Plaintiff purchased his P320 new and paid approximately $1,093.82 for the

pistol.

6.    Sig Sauer, Inc. is a Delaware corporation with a principal place of business at 72

Pease Boulevard; Newington, New Hampshire 03801.

7.    Sig Sauer designs, manufactures, and markets firearms, including the P320.

## II.    JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) because

there are more than 100 class members and the aggregate amount in controversy exceeds

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

$5,000,000, and at least one member of the proposed class is a citizen of a state different than Defendant.

9.      Venue is proper in this District under 28 U.S.C. § 1391.

### III.    FACTUAL ALLEGATIONS

**A.    Overview**

10.     Sig Sauer is a firearms manufacturer that designs, manufactures, and markets a pistol known as the P320. *See P320 Pistols*, Sig Sauer (accessed Oct. 7, 2025), available at https://www.sigsauer.com/firearms/pistols/p320.html. A picture of the P320 is shown here:



P320 advertisement: "WE'LL TAKE IT FROM HERE".

11.     The P320 comes in various models (i.e., sizes, colors, etc.), but with respect to the pistol's internal mechanisms, all P320s are designed and work the same with the same safety characteristics.

12.     The P320 has a unique design in the United States pistol market, combining a very light, short trigger pull with a design that cocks and 97% energizes the weapon anytime it is loaded.

13.     When a single action pistol is "cocked" (either by manually thumbing the hammer or by operation of the slide) three things occur. First, the pistol is energized so that it

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  has sufficient stored mechanical energy to discharge the primer of a loaded cartridge of

2  ammunition. Second, the trigger pull distance of the pistol is almost always shortened. And

3  third, the trigger pull weight of the pistol is almost always lessened.

4      14.    The term "energize" describes the act of charging a pistol with mechanical

5  energy that can be released to discharge the firearm.

6      15.    The P320 combines these features making the pistol easier to discharge, while

7  omitting any means of de-energizing the weapon when a round is chambered and omitting any

8  external safety device to prevent the trigger from moving.

9      16.    All of the P320s at issue contain the same Defect (as defined in paragraphs 17-

10  25, *infra*).

11  **B.    The Defect**

12      17.    The Sig Sauer P320 is defective. The Defect has three components that, when

13  combined, create an unreasonably dangerous product for its reasonably anticipated use.

14      18.    Those components are: (1) the P320 is effectively fully energized and ready to

15  fire the instant that a round is chambered; (2) the P320 has a minimal trigger pull because it is

16  short and lightweight; and (3) the P320 lacks any external safety features. These characteristics,

17  when combined, constitute "the Defect."

18      19.    Because of the Defect, the Sig Sauer P320 when chambered is functionally

19  equivalent to a cocked gun with no external safety features.

20      20.    Sig Sauer does not inform customers that the P320 has sufficient energy to

21  discharge a bullet any time a round is chambered.

22      21.    All P320s have a very short, light trigger pull. That means the P320's trigger

23  requires less work to fire the pistol than the trigger on pistols made by other manufacturers.

24      22.    Despite being fully energized with a short, light trigger pull, Sig Sauer did not

25  design the P320 to include any of the available external safety features routinely used on other

26  pistols. Such features may include a manual safety, trigger safety, or grip safety.

27

CLASS ACTION COMPLAINT - 4

23.    Sig Sauer knows that a manual safety would make the P320 safer.

24.    Because the P320 is effectively cocked when loaded, the P320 is functionally equivalent to a single action pistol with the hammer cocked back, i.e., ready to fire and without any safety features to prevent it from firing.

25.    Sig Sauer knows that just by looking at the P320, holding the P320, racking the P320's slide, or even firing the P320, a reasonable consumer could not determine what the action type of the P320 is. In other words, consumers would not know that the P320 is fully energized and ready to fire.

26.    Sig Sauer has been aware of the P320's Defect since at least 2017 and has maintained that information solely within its possession. Despite the P320's Defect and known design risks, Sig Sauer refuses to warn customers about the P320's dangers or modify its design in any way.

**C.    All P320s have the Defect.**

27.    While the P320 comes in a variety of sizes and with a variety of optional add-ons, all P320s share the same design and safety characteristics because they all contain the same "fire control unit." According to Sig Sauer, the fire control unit is "the component (frame) that houses a majority of the key functional parts of some handguns; including parts such as the trigger, sear, and slide catch lever; and is the serialized part of the firearm."

28.    Similarly, the large, medium, and small sizes of the P320's grip module do not impact the functionality of the P320. Sig Sauer defines the grip module as "a polymer or alloy component of a handgun that houses the primary firing components, including the trigger, sear, hammer, or striker."

29.    Additionally, the full size, compact, and subcompact versions of the P320 do not impact the functionality of the P320.

30.    The P320 also comes in different models or variants, such as the P320X variant, which has a different shaped handle, but all the variants and models still contain the Defect. For

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  example, the P320X has the same fire control unit as the standard issued P320 and none of the

2  ergonomic differences in the P320X change the way the P320 mechanically works, including its

3  safety features.

4      31.    The different magazine sizes that correspond to different grip sizes of the P320

5  also do not impact the P320's basic mechanical functions.

6      32.    Ultimately, the different versions of the P320 all mechanically function the same

7  and use the same fire control unit.

8  **D.    The origin of the P320**

9      33.    The P320 was originally based off a Sig Sauer pistol design called the P250. The

10  P250 is a discontinued pistol.

11      34.    Prior to being discontinued, the P250 was removed from consideration in 2010

12  by the United States Bureau of Alcohol, Tobacco, and Firearms due to reliability and safety

13  concerns.

14      35.    In 2012, Sig Sauer pivoted from the P250 to the P320 with the goal of developing

15  "a striker fired pistol capable of using the P250 grip modules," along with other common parts,

16  including a pre-existing inventory of barrels the company had in storage. In other words, Sig

17  Sauer was trying to use the leftover parts of the P250 in a new firearm—the firearm that would

18  become the P320.

19      36.    Before working on the P320, no one on the P320's design team had ever

20  designed a striker fired pistol.

21      37.    Indeed, Sig Sauer's engineering team was sidelined during the design phase of

22  the P320. Instead, Sig Sauer's marketing department had substantial control over the final

23  design of the pistol.

24      38.    Sig Sauer's engineers did not decide that the P320 should have such a light

25  trigger—that decision was approved as "a marketing call."

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

39.     The P320 was originally designed to have both a thumb safety and a trigger safety. But, again, Sig Sauer's marketing team decided to remove those as standard safety features, and—in the case of the trigger safety—decided not to offer it as an option.

**E.     Sig Sauer knew of the Defect.**

> a.     *Sig Sauer determined that each P320 is at a "high risk" to "kill [a] person unintentionally."*

40.     In February 2017—over eight years before the commencement of this suit and before Plaintiff purchased his P320—Sig Sauer evaluated the safety hazards of the P320 and reported them to the U.S. Army as part of the contract process to supply the P320 as the military's next pistol. The name of the evaluation was the "MHS Pistol Failure Modes, Effects, and Criticality Analysis (FMECA)."

41.     The risk assessment identified the P320 as having a "high" risk for having an accidental discharge that could kill a person unintentionally:

| Potential Failure Mode (results in a loss of "Function" or realization of a hazard) | Potential Cause of Failure (Prob of Occurrence) | O | Potential Effect of Failure (Severity - Function) | S | Risk Assessment Matrix Level |
|---|---|---|---|---|---|
| Pistol accidentally / unintentional discharges | Accidental trigger pull (Operator error) Finger on trigger | C | Kill person unintentionally | 1 | High |
| Pistol accidentally / unintentional discharges | Accidental trigger pull (Foreign Object) | C | Kill person unintentionally | 1 | High |

42.     Further, Sig Sauer evaluated those unintentional discharge risks as "likely to occur sometime[] in the life of an item." Put another way, Sig Sauer admits that every P320 unit is likely to suffer an unintended discharge during the life of each pistol.

43.     This risk assessment of "catastrophic" is shown on the risk assessment matrix below:

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

| RISK ASSESSMENT MATRIX | | | | |
|---|---|---|---|---|
| SEVERITY / PROBABILITY | Catastrophic (1) | Critical (2) | Marginal (3) | Negligible (4) |
| Frequent (A) | High | High | Serious | Medium |
| Probable (B) | High | High | Serious | Medium |
| Occasional (C) | High | Serious | Medium | Low |
| Remote (D) | Serious | Medium | Medium | Low |
| Improbable (E) | Medium | Medium | Medium | Low |
| Eliminated (F) | Eliminated | | | |

44.     The FMECA identified safety measures that would decrease the P320's likelihood of unintentional discharge, which included employing a manual thumb safety and training according to a particular Army field manual.

45.     Thus, since at least February of 2017, Sig Sauer has known about the dangerous design of the P320.

46.     But even after identifying safety measures to decrease the P320's likelihood of unintentional discharge, and even in the face of the known likelihood, Sig Sauer refuses to adopt any external safety features for the P320.

47.     Sig Sauer did not disclose the above-described catastrophic risk of the P320 to consumers. To the contrary, it took purposeful measures to prevent this information from entering the public domain.

**F.     Sig Sauer knows that the P320's Defect injures consumers and law enforcement.**

48.     Several national news outlets—like ABC News and the Washington Post— have reported on consumers across the country who have been injured due to inadvertent discharges of the P320. *See, e.g., Detective sues Sig Sauer after she says her holstered P320*

CLASS ACTION COMPLAINT - 8

*handgun nearly killed her*, ABC News (Aug. 24, 2021) (accessed October 7, 2025), available at

https://abcnews.go.com/US/detective-sues-sig-sauer-holstered-p320-handgun-

killed/story?id=79605906.

49.    The Washington Post reported in April last year, "At least 80 people, including

police officers, allege they were shot by their SIG Sauer P320 pistols." *Popular handgun fires*

*without anyone pulling the trigger, victims say*, Wash. Post (April 11, 2023).

50.    For its part, Sig Sauer has collected four binders' worth of incident reports

concerning the P320 that its senior customer service manager keeps at his home. But the

custodian of those binders does not collect incident reports from any other firearm that Sig

Sauer manufactures. Thus, even within Sig Sauer, the P320 stands alone.

51.    Sig Sauer states that it has received over 200 complaints of unintended

discharges of the P320, far more than any other pistol it manufactures. And several have been

captured on video and reported in the media. Police1, *Conn. police department to replace all*

*officers' handguns due to safety concerns*:



(July 28, 2023) (accessed Oct. 7, 2025), available at https://www.police1.com/police-
products/firearms/articles/conn-police-department-to-replace-all-officers-handguns-due-to-
safety-concerns-shVuKA0s4AIcvJze/

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

52.    Sig Sauer dismisses these videos and news reports as "anti-gun" or perhaps fraudulent, even comparing them to videos of Bigfoot.

53.    Indeed, Sig Sauer's response to customer complaints and media reports about the P320 has been a strategy of denial. Sig Sauer's internal documents show that the company blames the "anti-gun media" (Option 1), the injured officers and their lawyers (Option 2), or even its competitor, Glock (Option 3):

**Statement 07/27**

Option 1 (News):
We are disappointed, but not surprised, that a liberal, anti-gun media outlet like ABC has chosen to report and sensationalize frivolous lawsuits being propagated by trial lawyers as newsworthy.

Option 2 (Trial Lawyers)
Once again, this lawsuit is a result of unsupported allegations and claims being propagated by trial attorneys seeking personal financial gain for a negligent discharge caused by the (insert officer if LE) mishandling and/or misuse of the firearm.

Option 3: (GLOCK)
We are not surprised that our competitor has decided to participate in sensationalizing false claims that seek to undermine the success of the P320.  This is nothing more than an act of desperation due to their inability to prove themselves in a head-to-head match up with us.

Sig Sauer email dated July 27, 2021, and attachment (emphasis in original).

54.    Given these concerns, several law enforcement agencies have decided the P320 is no longer safe to use. This includes the recent ban issued by the U.S. Immigration and Customs Enforcement (ICE). *The Surprising FBI evaluation and ICE ban of the troubled Sig Sauer P320*, Yahoo News (July 10, 2025) (accessed Oct. 7, 2025), available at https://www.yahoo.com/news/surprising-fbi-evaluation-ice-ban-153437096.html.

55.    ICE issued a memo to remove the P320, written by Madison D. Sheahan, Deputy Director at ICE, with the subject titled "Discontinuation of Approval for ICE Authorized Officers

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  to Carry All Models of the SIG Sauer P320 and Direction to Purchase Glock 19s as Replacement

2  Duty Handguns for Affected ICE Officers and All ICE AOs Moving Forward."[1]

3      56.    Likewise, the National Law Enforcement Firearms Instructors Association

4  recently banned all P320 models from use in all of its training courses. *Nation's Law*

5  *Enforcement Instructors Declare SIG P320 Unsafe for Training*, SOFREP (July 29, 2025) (accessed

6  Oct. 7, 2025), available at https://sofrep.com/news/nations-law-enforcement-instructors-

7  declare-sig-p320-unsafe-for-training/.

8      57.    Other agencies that have removed the P320 as their duty weapon include, but

9  are not limited to:

- **Chicago Police Department**. *Sig Sauer's P320 banned by Chicago Police Department and other law enforcement agencies*, WE ARE THE MIGHTY (June 25, 2025) (accessed Oct. 7, 2025), available at https://www.yahoo.com/news/sig-sauer-p320-banned-chicago-154300609.html.

- **Milwaukee, Wisconsin Police Department**. *Milwaukee Police to replace all officer weapons following 'unexpected' discharges*, Spectrum News 1 (Oct. 31, 2022) (accessed Oct. 7, 2025), available at https://spectrumnews1.com/wi/milwaukee/news/2022/10/31/milwaukee-police-to-replace-all-officer-weapons-following-unexpected-discharges.

- **Philadelphia Transit Police**. *Philadelphia Transit Police Scrap SIG Sauer Pistols After Incident*, New Hampshire Public Radio (September 11, 2019) (accessed Oct. 7, 2025), available at https://www.nhpr.org/post/philadelphia-transit-police-scrap-sig-sauer-pistols-after-incident.

- **Ventura, California Police Department**. *Ventura Police Department Approves $300k for Smith and Wesson M&P 2 Handgun Purchase*, Citizen Portal (Sept. 25, 2025) (accessed Oct. 7, 2025), available at https://citizenportal.ai/articles/5827510/Oxnard-City/Ventura-County/California/Ventura-Police-Department-Approves-300K-for-Smith-and-Wesson-MP-2-Handgun-Purchase.

---

[1] Available at https://www.wearethemighty.com/wp-content/uploads/2025/07/IMG_3294.jpeg (accessed October 7, 2025).

CLASS ACTION COMPLAINT - 11

- **North Dakota Highway Patrol**. *Factory recall: Safety warning with Sig Sauer P320 pistol*, Blue Line (Dec. 15, 2017) (accessed Oct. 7, 2025), available at https://www.blueline.ca/factory-recall-safety-warning-with-sig-sauer-p320-pistol-5052/#:~:text=Other%20agencies%20such%20as%20North,sent%20back%20to%20the%20factory.

- **Montville, Connecticut Police Department**. *Conn. Police department to replace all officers' handguns due to safety concerns*, Police 1 (July 28, 2023) (accessed Oct. 7, 2025), available at https://www.police1.com/police-products/firearms/articles/conn-police-department-to-replace-all-officers-handguns-due-to-safety-concerns-shVuKA0s4AIcvJze/.

- **Brookfield, Connecticut Police Department**. *Some Connecticut police are replacing a handgun that can reportedly fire without being triggered*, Newstimes (April 30, 2024) (accessed Oct. 7, 2025), available at https://www.newstimes.com/local/article/ct-police-sig-sauer-guns-safety-19404483.php.

- **Orange, Connecticut Police Department**. *Some Connecticut police are replacing a handgun that can reportedly fire without being triggered*, Newstimes (April 30, 2024), available at https://www.newstimes.com/local/article/ct-police-sig-sauer-guns-safety-19404483.php.

- **Morrow, Alabama Police Department**. *Morrow police chief pulls Sig Sauer['s] guns from service*, Alive (Aug. 10, 2017) (accessed Oct. 7, 2025), available at https://www.11alive.com/article/news/local/morrow-police-chief-pulls-sig-sauers-guns-from-service/85-463471360.

- **Bridge City, Texas Police Department**. *Lawsuit: Semi-automatic police service gun goes off by itself, nearly killing detective*, ABC News (August 25, 2021) (accessed Oct. 7, 2025), available at https://abc11.com/sig-sauer-lawsuit-p320-pistol-brittney-hilton-accidental-discharge/10974219/.

- **Burnet City, Texas Police Department**. *BPD transitions to new duty gun to replace problematic firearm,* Daily Trib (Oct. 24, 2024) (accessed Oct. 7, 2025), available at https://www.dailytrib.com/2024/10/24/bpd-transitions-to-new-duty-gun-to-replace-problematic-firearm/.

- **Marble Falls, Texas Police Department**. *MFPD recalls sidearms after accidental gun discharge at school*, Daily Trib (Sep. 24, 2024) (accessed Oct. 7, 2025), available at https://www.dailytrib.com/2024/09/24/mfisd-officer-injured-in-accidental-gun-discharge-on-campus/.

- **Indian River County, Florida Sheriff's Office**. *Indian River County Sheriff's Office switches to new firearm after deputy injured in unintended discharge*, 5 WPTV

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

West Palm Beach (Dec. 4, 2023) (accessed Oct. 7, 2205), available at https://www.wptv.com/news/treasure-coast/region-indian-river-county/indian-river-county-sheriffs-office-new-weapons-12-4-23.

58.     These concerns continue to mount. In October 2024, the Washington State Criminal Justice Training Commission issued a memo stating that it "has become aware of a serious safety concern with the Sig Sauer P320," and that "during a Basic Law Enforcement Academy (BLEA) firearms training, a student experienced a premature discharge with their agency issued firearm," which led the Commission to discover a separate incident involving the P320 in Washington state earlier in 2024. Accordingly, the Commission decided that it "will not authorize the use of the Sig Sauer P320 in our agency-owned or contracted training facilities until further notice."

59.     And in November 2024, a CBS news outlet reported on—and published video footage of—an officer who was nearly killed when the P320 discharged in his holster while he was walking. *It happened again: Texas officer injured by holstered SIG SAUER P320*, CBS | Austin (Nov. 1, 2024) (accessed Oct. 7, 2025), available at https://cbsaustin.com/news/local/it-happened-again-texas-officer-injured-by-holstered-sig-sauer-p320.



https://cbsaustin.com/news/local/it-happened-again-texas-officer-injured-by-holstered-sig-sauer-p320

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**G.    Sig Sauer Doubles Down on the P320**

60.    Despite all these warning signs—including its own internal analysis—Sig Sauer's website formerly touted the P320's safety by stating:

> We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to.

*Trigger warning*, CNN (June 6, 2018) (accessed Oct. 7, 2025), available at https://www.cnn.com/interactive/2018/06/investigates/sig-sauer-p320-drop-fire/.

61.    Now, the P320's landing page has a bolded, fully capitalized header that states: "SAFETY WITHOUT COMPROMISE." (accessed Oct. 7, 2025), available at https://www.sigsauer.com/firearms/pistols/p320.html.

62.    Underneath the heading, Sig Sauer states, "Safety isn't negotiable. The P320 maximizes peace of mind with a robust safety system . . . ." *Id.*

63.    In March 2025, Sig Sauer launched a social media campaign across various platforms exclaiming, "THE TRUTH ABOUT THE P320," and stating that, when it comes to the P320, "It ends today."



CLASS ACTION COMPLAINT - 14

1    64.    In other slides, the same post cast aspersions against anyone drawing attention

2  to the P320's serious problems—calling them "clickbait farming, engagement hacking grifters"

3  and the "anti-gun mob" while accusing anybody who challenges the P320's safety of engaging

4  in "lawfare." The full post reads:



5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20

21    65.    Despite Sig Sauer's position on social media, in the U.S. District Court for the

22  District of New Hampshire alone, 64 plaintiffs filed consolidated complaints in June of 2024,

23  alleging they were injured by inadvertent P320 discharges. *See In Re: Sig Sauer P320 Products*

24  *Liability Litigation*, No. 22-CV-536 (D.N.H.), ECF Nos. 63-72.

25    66.    And in a related action, another 39 individuals have filed a consolidated action

26  against Sig Sauer. *See Anderson et al. v. Sig Sauer, Inc.*, No. 25-CV-113 (D.N.H).

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

67.    To date, injured individuals have filed no fewer than 32 additional cases against Sig Sauer in federal courts across the country, alleging inadvertent discharge of the P320, with many of the victims being law enforcement agents:

| Personal Injury Suits Against Sig Sauer Concerning P320 | | | | |
|---|---|---|---|---|
| Case Name[2] | Law Enforcement Plaintiff | Jurisdiction | Case No. | Date Filed |
| Vadnais v. Sig Sauer* | Sheriff | E.D. Va. | 18-CV-540 | May 4, 2018 |
| Mayes v. Sig Sauer* | Former law enforcement | W.D. Ky. | 19-CV-146 | Oct. 16, 2019 |
| Frankenberry v. Sig Sauer* | Former Police Officer | D. S.C. | 19-CV-2990 | Oct. 22, 2019 |
| Jinn v. Sig Sauer* | Homeland Security Special Agent | S.D.N.Y. | 20-CV-1122 | Feb. 10, 2020 |
| Hoefs v. Sig Sauer* | x | W.D. Wash. | 20-CV-5173 | Feb. 26, 2020 |
| Williams v. Sig Sauer* | x | E.D. Ky. | 20-CV-78 | May 22, 2020 |
| Guay v. Sig Sauer* | x | D. N.H. | 20-CV-736 | July 2, 2020 |
| Powers v. Sig Sauer* | Former U.S. Sergeant | M.D. Fla. | 20-CV-2026 | Aug. 28, 2020 |
| Haynes v. Sig Sauer* | Police Officer | N.D. Ga. | 20-CV-4218 | Oct. 13, 2020 |
| Schneider v. Sig Sauer* | x | D. N.H. | 20-CV-1190 | Dec. 18, 2020 |
| Watson v. Sig Sauer* | x | N.D. Tex. | 21-CV-106 | Jan. 29, 2021 |
| Slatowski v. Sig Sauer* | Deportation Officer with ICE | E.D. Pa. | 21-CV-729 | Feb. 17, 2021 |
| Campbell v. Sig Sauer* | | W.D. Mo. | 21-CV-5047 | May 19, 2021 |
| Ahern v. Sig Sauer | Detective Lieutenant | D. Mass. | 21-CV-11007 | June 16, 2021 |
| Hilton v. Sig Sauer* | Detective | E.D. Tex. | 21-CV-441 | Aug. 16, 2021 |
| Collette v. Sig Sauer* | Police Officer | D. Mass. | 21-CV-11392 | Aug. 25, 2021 |
| Lang v. Sig Sauer* | x | N.D. Ga. | 21-CV-4196 | Oct. 11, 2021 |
| Herman v. Sig Sauer* | x | W.D. Okla. | 21-CV-1038 | Oct. 25, 2021 |
| Colwell v. Sig Sauer* | Police Officer | N.D.N.Y. | 21-CV-1200 | Nov. 2, 2021 |

---

[2] Case names denoted with an "*" are no longer pending.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

| Personal Injury Suits Against Sig Sauer Concerning P320 | | | | |
|---|---|---|---|---|
| Case Name[2] | Law Enforcement Plaintiff | Jurisdiction | Case No. | Date Filed |
| *Davis v. Sig Sauer\** | | E.D. Ky. | 22-CV-10 | Feb. 1, 2022 |
| *Catatao v. Sig Sauer\** | Police Officer | D. Mass. | 22-CV-10620 | April 26, 2022 |
| *White v. Sig Sauer\** | Police Officer | N.D. Ga. | 22-CV-1985 | May 18, 2022 |
| *Williams v. Sig Sauer\** | x | E.D. N.C. | 22-CV-48 | May 18, 2022 |
| *Winingham v. Sig Sauer\** | x | D. Ariz. | 22-CV-1037 | June 16, 2022 |
| *Desrosiers v. Sig Sauer* | Police Officer | D. Mass | 22-CV-11674 | Oct. 3, 2022 |
| *Valentino v. Sig Sauer\** | Special Agent, Homeland Security | D. N.J. | 23-CV-1309 | March 8, 2023 |
| *Hall v. Sig Sauer* | Police Officer | M.D. Pa. | 23-CV-978 | June 13, 2023 |
| *Cole v. Sig Sauer* | Sheriff | D. Maine | 23-CV-327 | Aug. 23, 2023 |
| *Jantz v. Sig Sauer* | x | D. Colo. | 24-CV-15 | Jan. 3, 2024 |
| *Barmore v. Sig Sauer\** | Police Officer | W.D. Lou. | 24-CV-56 | Jan. 16, 2024 |
| *Torres v. Sig Sauer* | Police Officer | D. P.R. | 24-CV-1441 | Sept. 20, 2024 |
| *Gomelskaya v. Sig Sauer* | x | Penn. Cty. Ct. of Common Pleas | 241200470 | Dec. 3, 2024 |
| *Currington, et al.v. Sig Sauer* | Police Officers | D.N.H. | 25-CV-26 | Jan. 13, 2025 |
| *Orrson v. Sig Sauer* | Sheriff | S.D. Tex. | 25-CV-1776 | April 17, 2025 |

68.    These cases are often tragic. For example, in *Gomelskaya*, the underlying incident involved the P320 inadvertently discharging into a man's femoral artery. The victim bled out and died. The victim's widow filed the case individually and on behalf of her deceased husband's estate.

69.    And in late 2024, a jury sitting in the U.S. District Court for the Northern District of Georgia awarded a man $2.35 million for pain, suffering, and medical damages, finding that the P320 was defectively designed after it shot through the man's leg while he pulled it out of his holster. *See* Verdict Form, *Lang v. Sig Sauer, Inc.*, No. 21-CV-4196 (June 20, 2024), ECF No. 131.

CLASS ACTION COMPLAINT - 17

**H.     The P320 is unique in the firearms industry.**

70.     Pistols that are comparable to the P320, like the Glock 17 or the Smith & Wesson M&P, use a combination of longer, heavier trigger pulls with a trigger safety to require more intentionality to fire.

71.     Other comparable pistols, like most model 1911s, use a combination of a grip safety and a manual thumb safety along with a longer, heavier trigger pull to require more intentionality to fire. Most model 1911s also include a de-cocking lever to safely de-energize the weapon before holstering. The Walter P99 and the Sig Sauer P229 also incorporate de-cocking levers.

72.     Indeed, a firearms expert has conducted a survey of over 45 comparable firearms and confirmed that the P320 is the only firearm of its type to contain all three components of the Defect in one model. In this respect, the P320 stands alone within the firearms industry.

**I.     Sig Sauer uniformly conceals the Defect from consumers.**

73.     Sig Sauer is aware that the company knows more about the P320 than a reasonable consumer does. Typical consumers do not have the scientific or engineering background necessary to determine whether the P320's internal mechanisms are defective.

74.     And Sig Sauer designed the P320 with knowledge that the product was going to be sold to the general public for a price, and it expected that consumers would purchase the P320 for their personal use, including everyday carry. For instance, Sig Sauer knows that users routinely keep a round chambered in their pistol.

75.     Even though Sig Sauer knows the P320 is harming individuals across the country, it has not made any design changes to the P320 in the last several years. Instead, Sig Sauer engages in the dissemination of counter-information in response to stories concerning inadvertent discharges of the P320.

76.     Sig Sauer purchases advertisements that are delivered to consumers through print advertising in magazines, television, and social media. It purchases national ad buys for its

CLASS ACTION COMPLAINT - 18

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  advertisements in magazines and Plaintiff is unaware of any limitation to those advertisements

2  being distributed within Washington.

3        77.    In addition to omitting information concerning the design of the P320, the

4  advertisements further conceal the Defect by equating the standard P320 (with no external

5  safety features) with the military-issued M17 and M18 (both of which include a manual safety).

6  Simply put, Sig Sauer attempts to leverage its relationship with the Department of Defense to

7  sell more pistols to civilian consumers and often relies on military iconography to achieve that

8  goal, even though the military and civilian versions of the pistols are markedly different.

9        78.    For example, the screen shot below is from Sig Sauer's P320 homepage—not the

10  page specifically dedicated to the M17 or M18—where Sig Sauer depicts a man in military

11  combat gear brandishing the P320, which is described by Sig Sauer as "CHOSEN THE WORLD

12  OVER":

13



14

15

16

17

18

19

20

21

22

23

24  *See P320 Pistols*, Sig Sauer (accessed Oct. 16, 2024), available at https://www.sigsauer.com/
    firearms/pistols/p320.html.

25

26        79.    The following example demonstrates how Sig Sauer advertises the P320

27  specifically—without reference to the M17 or M18—by depicting an individual in military

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  combat fatigues on the P320 landing page, with the statement that the P320 is "Chosen by all

2  branches of the U.S. military":



80.    Another example is the following advertisement for the M17 specifically that

states it is "BASED ON THE P320" while letting consumers know that the "M17 IS THE U.S.

ARMY'S CHOICE," and even displays the U.S. Army's logo, but again completely omits that the

Army-issued M17 includes a manual safety whereas the standard P320 does not:



**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

CLASS ACTION COMPLAINT - 20

**J.      The proposed class is uniformly damaged by Sig Sauer's conduct.**

81.      The P320 pistols that Washington consumers purchased were defective at the time of acquisition. As a result, consumers overpaid for the products, because the Defect differentiated the P320 from the accepted quality and safety standards for new handguns.

82.      Firearms experts confirm that the Defect is manifested in every P320 and the design is not a "potential defect."

83.      Thus, Sig Sauer failed to fulfill its bargain with consumers who agreed to purchase the P320 because those pistols were less valuable than what consumers reasonably expected to receive.

84.      A uniform damages model equally applicable to all P320s—proffered and supported by an economist—will allow a jury to measure overpayment harm suffered by class members as a result of the alleged Defect.

## IV.      EQUITABLE TOLLING

85.      The running of the statute of limitations is tolled due to equitable tolling. Sig Sauer is estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment, through affirmative misrepresentations and omissions to Plaintiff and putative class members of the P320's Defect. Sig Sauer affirmatively withheld and misrepresented facts concerning the safety of the P320. As a result of Sig Sauer's misrepresentations and concealment, Plaintiff and putative class members were unaware, and could not have known or have learned through reasonable diligence, of facts related to Sig Sauer's misrepresentations or omissions, that the P320 was defective and that consumers were being harmed as a direct and proximate result of the wrongful acts and/or omissions of Sig Sauer.

86.      Given Sig Sauer's affirmative actions of concealment by failing to disclose this known but non-public information about the P320's Defect—information over which Sig Sauer had exclusive control—and because Plaintiff and putative class members could not reasonably have known of the P320's Defect, Sig Sauer is estopped from relying on any statutes of

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  limitations or repose that might otherwise be applicable to the claims asserted herein during

2  the pendency of its concealment.

3  **V.    CLASS ALLEGATIONS**

4  87.    Plaintiff, on behalf of himself and the proposed Class, re-alleges the foregoing

5  paragraphs as if fully set forth herein.

6  88.    Plaintiff seeks to represent the following proposed Class:

7
8  **All persons who purchased a Sig Sauer model P320 pistol without
   an external thumb safety in the state of Washington from
9  November 17, 2021, through the present, in addition to any
   period of court-ordered equitable tolling.[3]**

10

11  89.    This action has been brought and may properly be maintained on behalf of the

12  Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

13  90.    **Numerosity**. Sig Sauer sold thousands of P320 firearms, including a substantial

14  number in Washington. Members of the proposed Class likely number in the hundreds or

15  thousands and are thus too numerous to practically join in a single action. Class members may

16  be notified of the pendency of this action by mail, supplemented by published notice (if

17  deemed necessary or appropriate by the Court).

18  91.    **Commonality and Predominance**. Common questions of law and fact exist as to

19  all members of the proposed Class and predominate over questions affecting only individual

20  class members. These common questions include whether:

21  •    whether the P320 contains the alleged Defect;

22

23

24  [3] The following are excluded from the class: (1) individuals who have filed an individual action
    against Sig Sauer related to the P320; (2) individuals who no longer own a P320 pistol without
25  an external thumb safety; (3) Sig Sauer, including any affiliate, parent, or subsidiary of Sig Sauer;
    (4) any judge to whom this case is assigned, his or her spouse, and all persons within the third
26  degree of relationship to either of them, as well as the spouses of such persons; and
    (5) members of the judge's staff.
27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- whether Sig Sauer knew or should have known that the P320 contains the alleged Defect;

- whether the P320's alleged Defect makes it unreasonably dangerous for its reasonably anticipated use;

- whether Sig Sauer has a practice of failing to inform consumers of the P320's alleged Defect;

- whether Sig Sauer has a practice of failing to inform consumers that the P320 was of a different design than the military version of the pistol;

- whether Sig Sauer's practices are deceptive;

- whether Sig Sauer's practices are unfair;

- whether Sig Sauer's practices impact the public interest;

- whether Sig Sauer's practices occurred in the course of Sig Sauer's trade or commerce;

- whether Plaintiff and the Class are entitled to damages; and

- whether Plaintiff and the Class are entitled to injunctive relief.

The foregoing questions are common to the class because they will be answered by scrutinizing Sig Sauer's conduct in relation to the P320 rather than the conduct of the individual class members.

92.     **Typicality**. Plaintiff's claims are typical of the claims of the proposed Class because he purchased the same firearm containing the same Defect in Washington within the class period; this similarity gives rise to substantially the same claims as the proposed Class.

93.     **Adequacy**. Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the members of the Class that he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously on behalf of the proposed class. The interests of members of the class will be fairly and adequately protected by Plaintiff and his counsel.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    94.    **Superiority**. A class action is superior to other available means for the fair and

2    efficient adjudication of this dispute. The injury suffered by each Class member, while

3    meaningful on an individual basis, is not of such magnitude as to make the prosecution of

4    individual actions against Sig Sauer economically feasible. Even if Class members themselves

5    could afford such individualized litigation, the court system could not. In addition to the burden

6    and expense of managing many actions arising from the P320 pistol's alleged Defect,

7    individualized litigation presents a potential for inconsistent or contradictory judgments.

8    Individualized litigation increases the delay and expense to all parties and the court system

9    presented by the legal and factual issues of the case. By contrast, a class action presents far

10    fewer management difficulties and provides the benefits of single adjudication, economy of

11    scale, and comprehensive supervision by a single court.

12    95.    In the alternative, the proposed Class may be certified because:

13    a.    the prosecution of separate actions by the individual members of the

14    proposed Class would create a risk of inconsistent or varying adjudication

15    with respect to individual Class members which would establish

16    incompatible standards of conduct for Sig Sauer;

17    b.    the prosecution of separate actions by individual Class members would

18    create a risk of adjudications with respect to them which would, as a

19    practical matter, be dispositive of the interests of other Class members not

20    parties to the adjudications, or substantially impair or impede their ability

21    to protect their interests; and

22    c.    Sig Sauer has acted or refused to act on grounds generally applicable to

23    the proposed Class, thereby making appropriate final and injunctive relief

24    with respect to the members of the proposed Class as a whole.

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

### VI.    VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT

2

### COUNT I
**Violation of the CPA - Unfair Acts or Practices**
**Wash. Rev. Code §§ 19.86.10 *et seq.***
**(Plaintiff Individually and on behalf of the proposed Class)**

3

4

5

6

96.    Plaintiff, on behalf of himself and the proposed Class, re-alleges the foregoing paragraphs as if fully set forth herein.

7

8

97.    Under the Washington Consumer Protection Act ("the CPA"), a "person" is defined to include any "natural persons, corporations, trusts, unincorporated associations and partnerships." Wash. Rev. Code § 19.86.010 (1). Plaintiff and the proposed Class members are all persons within the scope of the CPA.

9

10

11

98.    Under the CPA, "Assets" is broadly defined to include "any property" or "any other thing of value." The P320 is an asset within the scope of the CPA. Wash. Rev. Code § 19.86.10(3).

12

13

14

99.    At all relevant times, Defendant engaged in "trade and commerce" through the sale of assets, namely the P320, and engaging in commerce that both directly and indirectly affected the people of the state of Washington, and thus, is capable of injuring a substantial portion of the public. *See* Wash. Rev. Code § 19.86.10(2).

15

16

17

18

100.    The CPA provides that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.20.

19

20

21

101.    Defendant violated and continues to violate the CPA by engaging in unfair acts or practices by omitting material facts concerning the safety of the P320 while engaging in trade and commerce.

22

23

24

102.    Defendant repeatedly advertised the P320 on its websites, through social media, podcasts, YouTube videos and related content, and national advertising campaign, but did not

25

26

27

CLASS ACTION COMPLAINT - 25

1  disclose the Defect or the dangers associated with the Defect to Plaintiff or proposed Class

2  members.

3        103.     Furthermore, Sig Sauer touts that the military adopted the P320 as its service

4  firearm—thereby giving the pistol credibility among gun enthusiasts—but omits that the

5  military version of the firearm (the M17 and M18) contains several design modifications absent

6  the consumer version of the pistol.

7        104.     Defendant's conduct is immoral, unethical, oppressive, or unscrupulous because

8  the failure to disclose such serious safety risks places consumers in serious danger.

9        105.     Defendant's omissions concerning the safety of the P320 and the nature of the

10  Defect impact the public interest because Sig Sauer is concealing from the public the dangerous

11  nature of the P320. These omissions lead to and have caused serious personal injuries to

12  consumers and have deceived a substantial portion of the Washington public.

13        106.     Thus, Sig Sauer's conduct is injurious to the public interest because it has:

14  (1) injured consumers; (2) had the capacity to injure other persons; and (3) currently has the

15  capacity to injure other persons.

16        107.     As a direct and proximate result of Sig Sauer's unfair acts and practices,  Plaintiff

17  and the proposed Class members have suffered an injury in fact and lost money. Had Sig Sauer

18  disclosed the true quality and defective nature of the P320 firearm, Plaintiff and Class members

19  would not have purchased them or would have paid substantially less for them.

20        108.     Plaintiff and the proposed Class are therefore entitled to legal relief against

21  Defendant, including the recovery of actual damages, treble damages, attorneys' fees, and

22  costs of suit.

**COUNT II**
**Violation of the CPA - Deceptive Acts or Practices**
**Wash. Rev. Code §§ 19.86.10 *et seq.***
**(Plaintiff Individually and on behalf of the proposed Class)**

23

24

25        109.     Plaintiff, on behalf of himself and the proposed Class, re-alleges the foregoing

26  paragraphs as if fully set forth herein.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

110.    The CPA provides that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.20.

111.    Defendant violated and continues to violate the CPA by engaging in deceptive acts or practices by omitting material facts concerning the safety of the P320 while engaging in trade and commerce. Defendant's acts purposefully misrepresent the nature of the product.

112.    Defendant repeatedly advertised the P320 on its websites, through social media, podcasts, YouTube videos and related content, and national advertising campaign, but Sig Sauer did not disclose the Defect or the dangers associated with the Defect to Plaintiff or proposed Class members.

113.    Furthermore, Sig Sauer touts that the military adopted the P320 as its service firearm—thereby giving the pistol credibility among gun enthusiasts—but omits that the military version of the firearm (the M17 and M18) contains several design modifications absent the consumer version of the pistol.

114.    Defendant's omissions concerning the safety of the Defect were material because they were likely to deceive a reasonable consumer into purchasing a P320 without being aware of the dangerous nature of the Defect.

115.    At the time that Sig Sauer designed, manufactured, and marketed the P320, it knew or should have known that the Defect posed serious safety risks to consumers like Plaintiff and the proposed Class members.

116.    Nonetheless, Sig Sauer concealed its knowledge of the Defect from consumers, including Plaintiff and members of the proposed Class.

117.    To this day, Sig Sauer continues to violate the CPA by concealing the Defect, by failing to issue a recall, by failing to notify customers of the serious safety issues posed by the Defect, and by failing to offer cost-free repair or replacement of the Defect.

118.    These acts or practices are deceptive within the meaning of the CPA because they have the capacity to deceive Washington consumers.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

119.    At all relevant times, Defendant's deceptive conduct engaged in "trade and commerce" through the sale of assets, namely the P320, and engaging in commerce that both directly and indirectly affected the people of the state of Washington, and thus, is capable of injuring a substantial portion of the public. *See* Wash. Rev. Code § 19.86.10(2).

120.    Defendant's omissions concerning the safety of the P320 and the nature of the Defect impact the public interest because Sig Sauer is concealing from the public the dangerous nature of the P320. These omissions lead to and have caused serious personal injuries to consumers and have deceived a substantial portion of the Washington public.

121.    Thus, Sig Sauer's conduct is injurious to the public interest because it has: (1) injured consumers; (2) had the capacity to injure other persons; and (3) currently has the capacity to injure other persons.

122.    Sig Sauer's deceptive acts and practices caused Plaintiff and the proposed Class members injuries and to suffer damages. Had Sig Sauer disclosed the true quality and defective nature of the P320 firearm, Plaintiff and Class members would not have purchased them or would have paid substantially less for them.

123.    Plaintiff and the proposed Class are therefore entitled to legal relief against Defendant, including the recovery of actual damages, treble damages, attorneys' fees, and costs of suit.

**COUNT III**
**Violation of the CPA - Injunctive Relief**
**Wash. Rev. Code §§ 19.86.10 *et seq.***
**(Plaintiff Individually and on behalf of the proposed Class)**

124.    Plaintiff, on behalf of himself and the proposed Class, re-alleges the foregoing paragraphs as if fully set forth herein.

125.    Under the CPA, "[a]ny person who is injured in his or her business or property" by a CPA violation "may bring a civil action in superior court to enjoin further violations." Wash. Rev. Code § 19.86.090.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

126.    For the reasons set forth above and incorporated herein, Defendant has violated the CPA, and Plaintiff and the proposed Class have been injured in their property by those violations. Thus, Plaintiff and the proposed Class have standing to seek an injunction to protect the public interest from future violations.

127.    Therefore, Plaintiff seeks an injunction prohibiting Defendant from continuing its unfair and deceptive practices. Specifically, Plaintiff asks the Court to order Defendant to adequately disclose or repair the Defect.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

A.    An order certifying the proposed Class and appointing Plaintiff and his counsel to represent the Class;

B.    An order awarding Plaintiff and the Class members their actual damages, and/or any other form of monetary relief provided by and pursuant law;

C.    Treble damages suffered by Plaintiff and the proposed Class under Wash. Rev. Code § 19.86.090;

D.    An order requiring Sig Sauer to adequately disclose or repair the Defect;

E.    An order awarding Plaintiff and the Class pre-judgment and post-judgment interest as allowed under the law; and

F.    An order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1         RESPECTFULLY SUBMITTED AND DATED this 17th day of November, 2025.

2                           TERRELL MARSHALL LAW GROUP PLLC

3                           By: /s/ Amanda M. Steiner, WSBA #29147

4                               Amanda M. Steiner, WSBA #29147
                              Email: asteiner@terrellmarshall.com

5                               936 N. 34th Street, Suite 300
                              Seattle, Washington 98103

6                               Telephone: (206) 816-6603

7                               Facsimile: (206) 319-5450

8                           WILLIAMS DIRKS DAMERON LLC

9                           By: /s/ Matthew L. Dameron

10                             Matthew L. Dameron, *pro hac vice forthcoming*
                            Email: matt@williamsdirks.com

11                           Clinton J. Mann, *pro hac vice forthcoming*

12                           Email: cmann@williamsdirks.com
                            1100 Main Street, Suite 2600

13                           Kansas City, Missouri 64105
                            Telephone: (816) 945-7110

14                           Facsimile: (816) 945-7118

15                           LEAR WERTS LLP

16

17                         By: /s/ Todd C. Werts

18                           Todd C. Werts, *pro hac vice forthcoming*
                            Email: werts@learwerts.com

19                           103 Ripley Street
                            Columbia, Missouri 65201

20                           Telephone: (573) 875-1991
                          Facsimile: (573) 279-0024

21

22                         *Counsel for Plaintiff and the Proposed Class*

23

24

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com